UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:18-cr-00127-NT-1 |
| ) | |
| KEON BAPTISTE-HARRIS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

The Defendant, Keon Baptiste-Harris, filed a *pro se* motion for compassionate release on March 1, 2021 ("**Def.'s Mot.**") (ECF No. 70). After reviewing the motion, I appointed counsel to represent the Defendant (ECF No. 74), who filed the pending amended motion for compassionate release ("**Def.'s Am. Mot.**") (ECF No. 79). The Government then filed an opposition to the amended motion (ECF No. 80), and the Defendant filed a reply (ECF No. 83). For the reasons that follow, the Defendant's amended motion for compassionate release (ECF No. 79) is **DENIED**.

**PROCEDURAL BACKGROUND**

On March 20, 2019, Mr. Baptiste-Harris pleaded guilty to distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1), and to possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). Presentence Investigation Report (**"PSR"**) ¶¶ 3–4 (ECF No. 73-3); Indictment (ECF No. 21). On September 9, 2019, I sentenced Mr. Baptiste-Harris to a total of ninety-six months imprisonment as well as three years of supervised release. Judgment (ECF No. 61). Mr. Baptiste-Harris received credit for time he spent in pretrial detention (he first entered federal

custody on June 26, 2018), PSR ¶¶ 1–3, and, with good-time deductions, his projected release date is now April 19, 2025, Sentencing Monitoring Computation Data 1 (ECF No. 80-3).

Mr. Baptiste-Harris is currently incarcerated at FCI Schuykill. Def.'s Am. Mot. 5. He first requested compassionate release from the Warden, but this request was denied. Def.'s Am. Mot. Ex. 8 (ECF No. 79-8). The Government acknowledges that Mr. Baptiste-Harris has exhausted his administrative remedies. Gov't's Resp. to Def.'s Mot. for Compassionate Release ("**Gov't Opp'n**") 10 (ECF No. 80).

## ANALYSIS

Congress enacted the compassionate release statute[1] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that: (1) extraordinary and compelling reasons warrant modification, (2) the modification

---

[1] Title 18, United States Code, Section 3582(c) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

accords with the sentencing factors found at 18 U.S.C. § 3553(a), and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A). I find that Mr. Baptiste-Harris has not established extraordinary and compelling reasons justifying his release for three reasons: (1) he has refused vaccination without justification; (2) he has already been infected with SARS-CoV-2, was asymptomatic, and has since recovered; and (3) the infection rate at FCI Schuylkill remains quite low.

First, Mr. Baptiste-Harris was offered the Pfizer-BioNTech vaccine against COVID-19 on February 10, 2021, but, as he acknowledges, he refused to be vaccinated. Bureau of Prisons ("**BOP**") Health Servs. Immunizations (ECF No. 80-1); Def.'s Mot. 4. The only reasons that Mr. Baptiste-Harris provides for his refusal to be vaccinated (both unsupported) are that he claims that an inmate died at MDC Brooklyn and that he was afraid that the vaccine "would worsen" his medical conditions. Def.'s Mot. 4.[2] Mr. Baptiste-Harris contends that his refusal to accept the vaccine should not affect the Court's analysis because (by virtue of his refusal) he remains unprotected against the virus. Reply to Gov't's Opp'n ("**Def.'s Reply**") 3 (ECF No. 83). I disagree. The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release.

---

[2] Mr. Baptiste-Harris does not explain whether he believes that this inmate died from the vaccine, the purported source of his information about this inmate, or why he believes that getting the vaccine would negatively impact his health.

3

While the interplay between vaccination refusal and compassionate release is a novel issue given the unique circumstances of the COVID-19 pandemic, I do not write on an entirely blank slate. Most of the courts to have encountered the issue have considered the refusal to accept a vaccine as counseling against granting compassionate release. *See United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 WL 1277958, at *6 (D. Me. Apr. 6, 2021) (collecting cases). I agree with this increasingly prevailing view. While Mr. Baptiste-Harris was within his rights to decline the vaccination, I need not reward him for that choice. *See id.*, at *7 ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants . . . to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."). This is particularly true because Mr. Baptiste-Harris offers no evidence supporting his contention that getting vaccinated might jeopardize his health.

While I understand that Mr. Baptiste-Harris is concerned that his medical conditions might place him at risk of serious illness from COVID-19, Def.'s Am. Mot. 9–11; Def.'s Reply 3, his failure to take the most effective step to prevent that result belies the sincerity of his concerns. To put it differently, Mr. Baptiste-Harris is not free to pick and choose the medical recommendations he wishes to follow. He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine. *See Greenlaw*, 2021 WL 1277958, at *7 ("[T]he same CDC that [the defendant] cites unequivocally recommends that people get vaccinated . . . .").

4

Second, while Mr. Baptiste-Harris's medical conditions may, in theory, put him at risk of serious illness, actual experience has not borne out this risk. On March 4, 2021, Mr. Baptiste-Harris was diagnosed with COVID-19. BOP Med. Recs. 9–10 (ECF No. 80-2). For the next ten days, he was evaluated daily, and he neither reported any symptoms nor presented as symptomatic to medical personnel.[3] BOP Med. Recs. 6. At the end of that ten-day period, he was considered to have recovered. BOP Med. Recs. 9. While I do not discount the possibility that Mr. Baptiste-Harris could be reinfected and become seriously ill, the risk of that seems fairly low. That marginal risk is not enough to demonstrate an "extraordinary and compelling reason[ ]" justifying relief since, even if Mr. Baptiste-Harris were to be reinfected, he offers no evidence to indicate that his second bout with COVID-19 would be any worse than his first. Other courts have found that asymptomatic infection is not an extraordinary and compelling reason warranting compassionate release, *see United States v. Moore*, Criminal Action No. 14-315-06, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) (collecting cases), so it follows that the same is true for the *risk* of an asymptomatic infection.

Third, as of April 22, 2021, FCI Schuylkill is reporting that there are three inmates and zero staff testing positive for SARS-CoV-2. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Apr. 22,

---

[3] Mr. Baptiste-Harris does not dispute this. After he became infected, he sent a letter to the Court in which he explained that he had contracted the virus and stated that his infection had not "been a[n] enjoyable experience, but rather a frightening unbearable one." Mar. 9, 2021, Letter 1 (ECF No. 79-4). Mr. Baptiste-Harris never indicated that he suffered any symptoms once he became infected, and, in context, I construe this to mean that he was afraid that his condition would worsen.

5

2021).[4] As a result, whatever risk of reinfection that might exist is mitigated by the existence of so few infections at Mr. Baptiste-Harris's facility.

For all of these reasons, I find that Mr. Baptiste-Harris has not established extraordinary and compelling reasons justifying his release. And because he has failed to clear that hurdle, I need not delve into the remainder of the compassionate release analysis. However, I also note the significance of the fact that Mr. Baptiste-Harris has only served around forty percent of his projected sentence. The length of time remaining on a defendant's sentence is a consideration in the compassionate release analysis. *See, e.g.*, *United States v. Kibble*, --- F.3d ---, No. 20-7009, 2021 WL 1216543, at *4 (4th Cir. Apr. 1, 2021) (per curiam); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). And other courts have found that releasing a defendant who has served a relatively small portion of his or her sentence does not serve the sentencing objectives outlined in § 3553(a). *See, e.g.*, *United States v. Gamino*, Case No. 11-CR-00595-LHK, 2021 WL 1531166, at *4 (N.D. Cal. Apr. 19, 2021); *United States v. Rasberry*, No. 2:15-cr-00127-JDL, 2020 WL 3977614, at *5 (D. Me. July 14, 2020); *United States v. Moskop*, Case No. 11-CR-30077-SMY, 2020 WL 1862636, at *2 (S.D. Ill. Apr. 14, 2020).

---

[4] As the Government notes, vaccines continue to be distributed within the BOP, Gov't's Resp. to Def.'s Mot. for Compassionate Release 14 (ECF No. 80), which will presumably help to keep the infection rate at FCI Schuylkill low. In fact, 93 FCI Schuylkill staff members are now fully vaccinated, while 520 inmates are fully vaccinated. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Apr. 22, 2021). This is almost half of the inmate population. *See* FCI Schuylkill, www.bop.gov/locations/institutions/sch/ (last visited Apr. 22, 2021).

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's Amended Motion for Compassionate Release (ECF No. 79).

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 22nd day of April, 2021.